# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAWRENCE WILLIAMS, III,
    Plaintiff,

v.                                          Case No. 22-C-1003

JENNIFER MCDERMOTT,
KETTLE MORAINE CORRECTIONAL INSTITUTION
HEALTH CARE PROVIDER,
JON NOBLE, THOMAS POLLARD,
TAMMY STAEHLER, BRIAN LEMPKE,
CORY SABISH, KELLY JODAR,
JULIE LUDWIG, SPECIAL NEEDS COMMITTEE,
ADVANCE CARE PROVIDER,
HEALTH AND SAFETY COMMITTEE,
MAKDA FESSAHAYE, and
JANE AND JOHN DOE 1-50,
    Defendants.

## SCREENING ORDER

Plaintiff Lawrence Williams, III, who is incarcerated at the Kettle Moraine Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. This order resolves plaintiff's motion for leave to proceed without prepaying the filing fee, screens his complaint, and addresses his motion to appoint counsel.

### I. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an

initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 27, 2022, I ordered plaintiff to pay an initial partial filing fee of $198.50. ECF No. 11. He paid that fee on October 7, 2022. I will grant plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. SCREENING THE COMPLAINT

### A. Federal Screening Standard

Under the PLRA, I must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, I apply the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). I construe *pro se* complaints liberally and hold them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**B. Plaintiff's Allegations**

The plaintiff sues Kettle Moraine Correctional Institution (KMCI) Warden Jennifer McDermott; "KMCI's Health Care Provider"; Deputy Warden Jon Noble; Security Director Thomas Pollard; Complex Supervisors Tammy Staehler, Brian Lempke, Cory Sabish, and Kelly Jodar; Health Services Unit Responsible Health Authority Julie Ludwig; Special Needs Committee; "Advance Care Provider"; Health and Safety Committee; Division of Adult Institution Administrator Makda Fessahaye; and John and Jane Does 1-50. He sues the defendants in their individual capacities.

The plaintiff alleges that the defendants violated his constitutional rights because they did not quarantine individuals with known or suspected cases of Covid-19 and that, as a result, he contracted Covid-19. Specifically, the plaintiff states that on March 23, 2020, Governor Tony Evers issued Emergency Order #9 to the Wisconsin Department of Corrections to implement a moratorium on admissions to state prisons to mitigate the

3

spread of Covid-19. One week later, the Center for Disease Control (CDC) Guidance on Management of Covid-19 in Correctional and Detention Facilities released instructions that aimed to prevent the spread of Covid-19 which included a guideline to quarantine close contacts of a known or suspected case.

On June 24, 2020, KMCI conducted its first mass Covid-19 testing, which resulted in one false positive result. The plaintiff tested negative. In August 2020, several KMCI prisoners tested positive for Covid-19 and, while the confirmed cases were quarantined, the prisoners and staff members who had close contact with the confirmed cases remained in general population.

On September 1 and 2, 2020, KMCI conducted its second mass Covid-19 testing, which resulted in numerous positive cases. The positive cases were quarantined but those who had close contact with confirmed cases remained in general population. The plaintiff tested negative. He was housed on Unit 3 and there were no positive cases on Unit 3.

On September 7, 2020, a prisoner named Kieuta Perry told defendant CO John Doe 1 that he felt ill with Covid-19 symptoms and John Doe 1 informed his supervisor, defendant John Doe 2, but Perry received no medical assistance. Defendant Jane Doe 1 instructed the plaintiff to keep social distancing, wash his hands, and stay in his room as much as possible.

Prior to September 17, 2020, five prisoners (Jorge Martinez, Adrian Watkins, Kieuta Perry, Marquel Thomas, and Tramelle Starks) housed on Unit 3 complained to defendant Jane Doe 2 that they had Covid-19 symptoms and she instructed them to stay in their cells except for showers, restroom use, and meals. The plaintiff states that the

4

entire unit uses the showers, restroom areas, trays, and cups. On September 17, 2020, defendant Jane Doe 3 informed the five prisoners that they tested positive for Covid-19. They were not isolated or quarantined, and they remained on Unit 3.

On September 23, 2020, KMCI conducted its third mass Covid-19 testing which resulted in hundreds of confirmed cases and the institution went on "full lockdown." Defendants Jane Doe 4 and Lempke told the plaintiff he tested positive for Covid-19. For about twenty days, the plaintiff suffered the effects of Covid-19 including chills, rashes, loss of small and taste, headaches, fatigue, and coughing.

On October 27, 2020, Bryan Polcyn of Fox 6 News Milwaukee interviewed defendant Fessahaye regarding the Covid-19 outbreak at Waupun Correctional Institution, asked her if she was still able to isolate and quarantine sick inmates from those who were not sick, and Fessahaye responded that she was able to do so. Polcyn then asked Fessahaye about a memo that Waupun's warden had issued that contradicted her response and she replied that she would have to check the memo. In the same news article, Polcyn reported that "Fox 6's investigation found nine of ten prisons with significant outbreaks are also well beyond their designed capacity for housing inmates." ECF No. 1 at 8. The plaintiff states that KMCI is among the prisons that had a significant outbreak and is well beyond its designed capacity.

On January 4, 2021, Emily Hamer of the Wisconsin State Journal interviewed Wisconsin Department of Corrections (DOC) spokesperson John Beard regarding Covid-19 cases at KMCI. In the interview Beard said, "There was a brief time when the prison had a few cases, and some inmate programming continued." *Id.* Beard also stated that it

was not the DOC's "policy or practice" to allow coronavirus exposed cellmates to interact with other prisoners.

The plaintiff claims that that the defendants were deliberately indifferent to his health and safety regarding contracting Covid-19 in that they did not report to the local health officer or designee when learning of the identification of a case or suspected case, decided not to quarantine the close contacts of confirmed and suspected cases, and did not isolate or quarantine the five prisoners referenced above who had confirmed cases, until the institution was placed on full lockdown.

Specifically, the plaintiff alleges that McDermott, Staehler, Sabish, Jodar, Noble, Pollard, Lempke, and Jane and John Doe HSU refused to quarantine prisoners who came into close contact with individuals who had confirmed and/or suspected cases Covid-19, in violations of his rights under the Eighth Amendment. The plaintiff alleges that McDermott failed to lock down KMCI after the second mass testing on September 1 and 2, 2020, which exposed him to a substantial risk of serious harm in violation of the Eighth Amendment.

The plaintiff also alleges that Ludwig, Jane Doe 2, and Jane Doe 3 exposed him to Covid-19 when they failed to ensure that the five prisoners received adequate medical care after they complained of having Covid-19 symptoms and failed to order that the five prisoners be medically isolated. He alleges that Jane Doe 2 & 3, KMCI's Health Care Provider, Advance Care Provider, Ludwig, Special Needs Committee, and Health and Safety Committee's failure to quarantine the five individuals after telling them they had Covid-19 violated his rights.

Lastly, the plaintiff alleges that Fessahaye's failure to act after being informed that sick prisoners were being placed in rooms with prisoners who were not sick shows her knowledge and direct participation in the deprivation of the plaintiff's constitutional rights.

The plaintiff seeks compensatory and punitive damages. He also seeks a court order that all HSU staff properly follow statutes, policy, and procedure concerning the prevention and control of communicable diseases, and a court order that prohibits prison staff from displaying behavior that would prevent HSU staff from following all statutes, policy, and procedure concerning the prevention and control of communicable diseases.

**C. Analysis**

As an initial matter, the Special Needs Committee and the Health and Safety Committee, which are part of KMCI and the DOC, are not subject to suit under 42 U.S.C. § 1983. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." *Johnson v. Supreme Court of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999) (citations omitted). Thus, the plaintiff may not proceed against these defendants.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To demonstrate a violation of the Eighth Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious. *Id*. at 834 (quotations omitted). "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. The second requirement

7

is that the prison official was deliberately indifferent "to inmate health or safety," *id.*, meaning that he was both aware of and disregarded "an excessive risk to inmate health or safety," *id.* at 837.

Courts have held that the risk of exposure to Covid-19 in prison satisfies the objective standard of an Eighth Amendment claim. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (recognizing that "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death"); *see also Ducksworth v. Utter*, No. 21-cv-97-PP, 2022 WL 3647884, at *4 (E.D. Wis. Aug. 24, 2022); *Stewart v. Haese*, No. 20-cv-1494-NJ, 2022 WL 1750523, at *2-3 (E.D. Wis. 2022). Thus, the relevant question in determining if the plaintiff states a claim is whether the defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether the defendants perfectly responded or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Wilson*, 961 F.3d at 840-41 (quoting *Farmer*, 511 U.S. at 844).

The plaintiff alleges that defendants Ludwig, Jane Doe 2, and Jane Doe 3 failed to quarantine the five prisoners who tested positive for Covid-19 on Unit 3 and that he tested positive less than one week later. However, while the plaintiff and the five prisoners were all on Unit 3, the plaintiff does not allege that he came into contact with them or that he contacted any of the defendants regarding these prisoners and their Covid-19 status. As alleged, the defendants' failure to quarantine the five prisoners did not impact the plaintiff.

In addition, the plaintiff does not state a claim based on his allegations that defendants refused to quarantine prisoners who had close contacts with individuals who

had Covid-19 or were suspected to have it. Again, while this may have occurred at KMCI, the plaintiff has not alleged defendants' actions caused him harm.

Similarly, the plaintiff cannot proceed against Warden McDermott based on allegations that she failed to lock down KMCI based after the second mass testing at the institution. The plaintiff describes other actions that were taken to mitigate the risk of the spread of Covid-19 at the institution and the failure to lock down the institution at a specific time does not amount to deliberate indifference. *See Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, at *2 (7th Cir. Nov. 10, 2021) (plaintiff who alleged assistant warden had mitigated risk by introducing quarantine measures failed to state a claim).

The plaintiff also does not state a claim against the DOC Division of Adult Institutions Administrator Fessahaye for failing to act after being informed that sick prisoners were being placed in rooms with prisoners who were not sick. The plaintiff appears to want to base a claim on Fessahaye's interview with a reporter about Waupun Correctional Institution. However, these allegations do not state a claim for a constitutional violation against the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.)

In sum, while the plaintiff describes why he thinks prison officials' response to the Covid-19 pandemic at KMCI was inadequate and caused him to contract Covid-19, the plaintiff has not alleged that any defendant's action or inaction violated his constitutional rights. He seeks damages based on the KMCI's overall response to Covid-19, including their responses to other prisoners, yet he has not alleged that he contacted any prison

official regarding his concerns. The plaintiff describes precautions that were taken at KMCI and alleges that staff there did not do enough, and that staff violated institution policy. Even if testing or quarantining was conducted negligently, negligence does not constitute deliberate indifference. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). In addition, a violation of state laws or regulations is not a basis for a federal civil rights case. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010); *Domka v. Portage Cty., Wis.*, 523 F.3d 776, 784 (7th Cir. 2008).

The complaint fails to state a claim for relief. I will give the plaintiff leave to file an amended complaint regarding his allegations that the five prisoners on Unit 3 were not quarantined. If the plaintiff had contact with these individuals and if he expressed concerns about this to prison officials, he may state claim based on these allegations.

When writing his amended complaint, plaintiff should provide the court with enough facts to answers to the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form and instructions. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, plaintiff may use up to five additional

sheets of paper. The amended complaint takes the place of the prior complaint and must be complete, without reference to his prior complaint.

### III. MOTION TO APPOINT COUNSEL

The plaintiff has filed a motion to appoint counsel. He states that he has limited access to the law library and little legal knowledge. The plaintiff also states that he has been receiving help from individuals with legal experience and that he has tried to find a lawyer on his own.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. *Watts v. Kidman*, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority*, 930 F.3d 869, 871 (7th

Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett*, 930 F.3d at 871.

The plaintiff has made a reasonable attempt to find a lawyer on his own. However, at this stage he only needs to file an amended complaint. The court is sending him a form to use in which to file his amended complaint. He does not need to conduct legal research

12

to file an amended complaint. Thus, even though the plaintiff states that he had help filing his original complaint, the court find that he can file an amended complaint on his own and it will deny without prejudice his motion to appoint counsel.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for leave to proceed without prepaying the filing fee (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (ECF No. 2) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint that complies with the instructions in this order on or before **January 17, 2023**. If plaintiff files an amended complaint by the deadline, the court will screen the amended complaint under 28 U.S.C. § 1915A. If plaintiff does not file an amended complaint by the deadline, the court will dismiss this case based on his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk's Office mail plaintiff a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from the plaintiff's prison trust account the $151.50 balance of the filing fee **by collecting payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the account in any month in**

13

**which either (1) the balance in the account exceeds $10 or (2) the income credited to the account in the preceding month exceeded $10.** The collected payments shall be sent to the clerk of court. The payments shall be clearly identified by the case name and number assigned to this case. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Plaintiff's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Dated at Milwaukee, Wisconsin, this 27th day of December, 2022.

                                              s/Lynn Adelman
                                              LYNN ADELMAN
                                              United States District Judge